Evan J. Smith
BRODSKY & SMITH, LLC
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:    516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HSUN HUNG LIN,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>MGM GROWTH PROPERTIES LLC, MGM GROWTH PROPERITES OPERATING PARTNERSHIP LP, MGM RESORTS INTERNATIONAL, PAUL SALEM, COREY SANDERS, JOHN M. MCMANUS, KATHRYN COLEMAN, THOMAS ROBERTS, CHARLES IRVING, DANIEL J. TAYLOR, VICI PROPERTIES INC., VICI PROPERTIES OP LLC, VICI PROPERTIES L.P., and VENUS SUB LLC.<br><br>　　　　　　Defendants. | Case No.:<br><br>COMPLAINT FOR:<br><br>(1)　Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2)　Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>DEMAND FOR JURY TRIAL |

Plaintiff, Hsun Hung Lin ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.　Plaintiff brings this action against MGM Growth Properties LLC ("MGP" or the "Company"), and the Company's Board of Directors (the "Board" or the "Individual Defendants"), the Company's majority stockholder MGM Resorts International ("MGM"), VICI Properties Inc. ("Parent" or "VICI"), and various related entities, including MGM Growth Properties Operating Partnership LP ("MGM LP"), VICI Properties OP LLC ("VICI OP"), VICI Properties L.P. ("VICI

LP"), and Venus Sub LLC ("Merger Sub", collectively with the Company, the Individual Defendants, VICI, MGM LP, VICI OP, and VICI LP, the "Defendants") for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of efforts to sell the Company to VICI, and to enjoin an upcoming stockholder vote on an all-stock proposed transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in an August 5, 2021, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement").   Under the terms of the Merger Agreement, MGM will become an indirect wholly-owned subsidiary of VICI, a subsidiary of the VICI.  MGM public stockholders will receive, in exchange for each share of MGM Class A share they own, 1.366 shares of newly issued VICI common stock.

3.      Thereafter, on September 8, 2021, VICI filed a Registration Statement on Form S-4 (the "Registration Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons.  Significantly, the Registration Statement reveals that the Proposed Transaction fails to contain either a "collar" provision to protect minority stockholders from fluctuations in VICI's share price or a "majority-of-the-minority" provision despite the fact that MGM holds more than 41.6% of the outstanding voting stock of the Company.

5.      In addition, the Proposed Transaction's structure provides for disparate treatment to MGM and public stockholders of MGP, with MGM able to exchange its holdings of the Company for $43.00 per share in cash, while public stockholders of the company are forced to receive 1.366 shares of VICI stock in consideration – stock which is not protected from fluctuations in VICI's share price and was valued at only $31.47 per share, a figure significantly less than the consideration that MGM is set to receive.

6.      Furthermore, it appears as though the Board has entered into the Proposed

Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

7.      In violation of the Exchange Act, Defendants caused to be filed the materially deficient Registration Statement on September 8, 2021 with the SEC in an effort to Plaintiff, to vote in favor of the Proposed Transaction.  The Registration Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for MGP and VICI, provided by MGP and VICI to the Board's financial advisor Evercore Group L.L.C. ("Evercore") and VICI's financial advisor Morgan Stanley & Co. LLC ("Morgan Stanley"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Evercore and Morgan Stanley, if any, and provide to the Company and the Board.

8.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

9.      Plaintiff is a citizen of Taiwan and, at all times relevant hereto, has been an MGP stockholder.

10.     Defendant MGP is a is one of the leading publicly traded real estate investment trusts engaged in the acquisition, ownership and leasing of large-scale destination entertainment

and leisure resorts, whose diverse amenities include casino gaming, hotel, convention, dining, entertainment and retail offerings.  MGP is incorporated under the laws of the State of Delaware and has its principal place of business at 1980 Festival Plaza Drive, Suite 750, Las Vegas, Nevada 89135.  Shares of MGP common stock are traded on the NYSE under the symbol "MGP."

11.     Defendant MGM is the majority stockholder of MGP and holds approximately 41.6% of MGP's outstanding stock.

12.     Defendant Paul Salem ("Salem") has been a Director of the Company at all relevant times.  In addition, Stewart serves as the Company's Chairman of the Board.

13.     Defendant Corey Sanders ("Sanders") has been a director of the Company at all relevant times.

14.     Defendant John M. McManus ("McManus") has been a director of the Company at all relevant times.

15.     Defendant Kathryn Coleman ("Coleman") has been a director of the Company at all relevant times.

16.     Defendant Thomas Roberts ("Roberts") has been a director of the Company at all relevant times.

17.     Defendant Charles Irving ("Irving") has been a director of the Company at all relevant times.

18.     Defendant Daniel J. Taylor ("Taylor") has been a director of the Company at all relevant times.

19.     Defendants identified in ¶¶ 12 - 19 are collectively referred to as the "Individual Defendants."

20.     Defendant VICI is an experiential real estate investment trust that owns one of the largest portfolios of market-leading gaming, hospitality and entertainment destinations, including the world-renowned Caesars Palace.  Shares of VICI common stock are traded on the NYSE under the symbol "VICI."

21.     Defendant MGM LP is an affiliated entity of MGP and MGM and is a party to the Proposed Transaction.

22.     Defendants VICI OP, VICI LP, and Merger Sub are an affiliated entities of VICI and are parties to the Proposed Transaction.

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and Section 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.

24.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

25.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the New York Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

26.     MGP is one of the leading publicly traded real estate investment trusts engaged in the acquisition, ownership and leasing of large-scale destination entertainment and leisure resorts, whose diverse amenities include casino gaming, hotel, convention, dining, entertainment and retail offerings. MGP, together with its joint venture, currently owns a portfolio of properties, consisting of 12 premier destination resorts in Las Vegas and elsewhere across the United States, MGM Northfield Park in Northfield, OH, Empire Resort Casino in Yonkers, NY, as well as a retail and entertainment district, The Park in Las Vegas. As of December 31, 2019, our destination resorts,

the Park, Empire Resort Casino, and MGM Northfield Park collectively comprised approximately 27,400 hotel rooms, 1.4 million casino square footage, and 2.7 million convention square footage. As a growth-oriented public real estate entity, MGP expects its relationship with MGM Resorts and other entertainment providers to attractively position MGP for the acquisition of additional properties across the entertainment, hospitality and leisure industries.

27.     The Company reported positive financial results in its most recent Press Release for the First Quarter 2021 Financial Results. For example, the Company reported net income of $115.4 million for the quarter, rental revenue of $188.3 million, and adjusted EBITDA for $240.9 million.

28.     Speaking on the positive results, Defendant CEO Stewart commented in the April 30, 2021 Press Release, "'MGP just celebrated its fifth anniversary as a public company and 2021 is off to another successful start. We completed the redemption of 37.1 million Operating Partnership units from MGM Resorts, reducing MGM's ownership to 42.1%, and raised our annualized dividend for the 12th time to $1.98 per share. Further, the first rent escalator under the MGP BREIT Venture lease of 2% went into effect on March 1, 2021 and the fifth base rent escalator under the MGM-MGP Master Lease of 2% went into effect on April 1, 2021, resulting in current annual pro rata rent of $992 million. We believe these steps further strengthen our ability to execute on our long-term strategy.'"

29.     The sustained financials and optimism are not an anomaly, but rather, are indicative of a trend of continued success and future potential success by MGP.  Clearly, the Company is likely to have tremendous future success and should command a much higher consideration than the amount contained within the Proposed Transaction.

30.     Despite this potential, the Individual Defendants have caused MGM to enter into the Proposed Transaction.

***The Proposed Transaction***

31.     On August 4, 2021, VICI and MGP issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

**NEW YORK & LAS VEGAS**--(BUSINESS WIRE)-- VICI Properties Inc. (NYSE: VICI) ("VICI Properties" or "VICI"), MGM Growth Properties LLC (NYSE: MGP) ("MGP") and MGM Resorts International (NYSE: MGM) ("MGM Resorts"), MGP's controlling shareholder, announced today that they have entered into a definitive agreement (the "Master Transaction Agreement") pursuant to which VICI Properties will acquire MGP for total consideration of $17.2 billion, inclusive of the assumption of approximately $5.7 billion of debt. Upon completion of the merger, VICI will have an estimated enterprise value of $45 billion, firmly solidifying VICI's position as the largest experiential net lease REIT while also advancing VICI's strategic goals of portfolio enhancement and diversification.

Under the terms of the Master Transaction Agreement, MGP Class A shareholders will receive 1.366 shares of newly issued VICI stock in exchange for each Class A share of MGP. The fixed exchange ratio represents an agreed upon price of $43.00 per share of MGP Class A shares based on VICI's trailing 5-day volume weighted average price of $31.47 as of July 30, 2021 and represents a 15.9% premium to MGP's closing stock price on August 3, 2021. MGM Resorts will receive $43.00 per unit in cash for the redemption of the majority of its MGP Operating Partnership units ("OP Units") that it holds for total cash consideration of approximately $4.4 billion and will also retain approximately 12 million units in a newly formed operating partnership of VICI Properties. The MGP Class B share that is held by MGM Resorts will be cancelled and cease to exist.

Simultaneous with the closing of the transaction, VICI Properties will enter into an amended and restated triple-net master lease with MGM Resorts. The lease will have an initial total annual rent of $860.0 million, inclusive of MGP's pending acquisition of MGM Springfield, and an initial term of 25 years, with three 10-year tenant renewal options. Rent under the amended and restated master lease will escalate at a rate of 2.0% per annum for the first 10 years and thereafter at the greater of 2.0% per annum or the consumer price index ("CPI"), subject to a 3.0% cap. Additionally, VICI will retain MGP's existing 50.1% ownership stake in the joint venture with Blackstone Real Estate Income Trust, Inc. ("BREIT JV"), which owns the real estate assets of MGM Grand Las Vegas and Mandalay Bay. The BREIT JV lease will remain unchanged and provides for current annual base rent of approximately $298 million and an initial term of 30 years, with two 10-year tenant renewal options. Rent under the BREIT JV lease escalates at a rate of 2.0% per annum for the first 15 years and thereafter at the greater of 2.0% per annum or CPI, subject to a 3.0% cap. On a combined basis, the MGM master lease and BREIT JV lease will deliver initial attributable rent to VICI of approximately $1.0 billion.

The transaction was approved by the Board of Directors of each of MGM Resorts, MGP and VICI Properties (and, in the case of MGP, the Conflicts Committee). The parties expect the transaction to close in the first half of 2022, subject to customary closing conditions, regulatory approvals and approval by the stockholders of VICI

Properties. The VICI Properties Board of Directors and management team will remain unchanged.

Additional details can be found in the Transaction Overview presentation posted on the VICI Properties website.

"Through this transformative strategic acquisition, we are merging MGP's best-in-class portfolio into VICI's best-in-class management and governance platform, creating the premier gaming, entertainment and leisure REIT in America," said Ed Pitoniak, CEO of VICI Properties. "We want to thank James Stewart, Andy Chien and the MGP Board for building and stewarding a portfolio of such exceptional quality, and going forward we are honored to become a key real estate and capital partner for Bill Hornbuckle and the MGM Resorts management team and Board. We look forward to supporting their strategic growth objectives for decades to come."

"After many years of growing both of our portfolios, combining them into one company will generate the best results for the shareholders of both companies," said James Stewart, CEO of MGP. "The combined company will create a superior platform for delivering exceptional returns to MGP's existing shareholders, by improving diversification, increasing scale, lowering cost of capital and benefiting from future growth."

Bill Hornbuckle, CEO and President of MGM Resorts, said, "This transaction unlocks the significant real estate value of our assets, enhances our financial flexibility and strengthens our ability to execute key growth initiatives. We look forward to our long-term partnership with VICI."

### Potential Conflicts of Interest

32.     The breakdown of the benefits of the deal indicate that MGP insiders and MGM are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of MGP.

33.     First, the consideration being paid to MGM is disparate and of greater value than that being paid to MGP public stockholders.  In fact, the $43.00 per share in cash per stock owned by MGM is more than 36.64% more valuable than the 1.366 shares of VICI stock that MGP public

stockholders will receive in consideration, based off of the value of VICI stock as quoted in the press release announcing the Proposed Transaction.

34.    In addition, the Registration Statement fails to provide an accounting of the ownership of MGP stock by Company insiders and MGM, or the consideration they are set to receive as a result of said stock amounts being exchanged for the merger consideration upon the consummation of the Proposed Transaction.

35.    Moreover, upon the consummation of the Proposed Transaction, the Registration Statement indicates that each outstanding Company stock option, restricted share, or other equity award will be canceled and converted into the right to receive certain consideration according to the merger agreement, but similarly provides for no accounting of the consideration which will be granted.

36.    In addition, certain employment agreements with certain MGP executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff.  These disparate interests held by the Director Defendants as discussed above are presented in the Registration collectively as follows:

| Name | Cash ($)[1] | Equity Awards ($)[2] | Total ($) |
|---|---|---|---|
| James Stewart | 5,195,000 | 6,012,665 | 11,207,665 |
| Andy Chien | 1,974,000 | 2,811,600 | 4,785,600 |

37.    The Registration Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

38.     Thus, while the Proposed Transaction is not in the best interests of MGP, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

**The Materially Misleading and/or Incomplete Registration Statement**

39.     On September 8, 2021, the MGP Board and VICI caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

<u>*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*</u>

40.     Specifically, the Registration Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Registration Statement fails to disclose:

a.   Adequate information as to why the Board agreed to the merger consideration without the protections of a collar mechanism to keep the merger consideration within a reasonable range;

b.   Adequate reasoning as to why no "majority-of-the-minority" provision was included in the Proposed Transaction despite Blackstone being a controlling stockholder;

c.   Adequate reasoning as to why MGM was granted superior consideration and preferential treatment as compared to other, public stockholders of MGP in terms of the consideration for their MGP stock;

d.   Whether the confidentiality agreements entered into by the Company with VICI differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties if any, and if so, in what way;

    e.   All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including VICI, would fall away;

    f.   Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning MGP's Financial Projections*

41.    The Registration Statement fails to provide material information concerning financial projections for MGP provided by MGP management and VICI and relied upon by Evercore and Morgan Stanley in their analyses.   The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading.

42.    The Registration Statement should have, but fails to provide, certain information in the projections that MGP management and VICI provided to the Board, Evercore, and Morgan Stanley.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

43.    With regard to the MGP Projections prepared by MGP management, the Registration Statement fails to disclose material line items for the following metrics:

    a.   Total Pro Rata Cash Rents, including all underlying necessary inputs and assumptions, including specifically: cash rent collected by MGP from the Existing Master Lease, and MGP's share of the cash rent collected by BREIT JV;

    b.   Adjusted EBITDA, including all underlying necessary inputs and assumptions, including specifically: MGP's general and administrative expenses (excluding equity-based compensation expense), and MGP's share of BREIT JV's general and administrative expenses; and

    c.   Unlevered Free Cash Flow, including all underlying necessary inputs and assumptions, including specifically: MGP's share of the cash rent collected by BREIT JV, MGP's equity-based compensation expense, MGP's share of distributions from BREIT JV, MGP's share of general and administrative expenses from BREIT JV, and changes in net working capital.

44.    With regard to the VICI Adjusted MGP Projections prepared by MGP management and adjusted by VICI, the Registration Statement fails to disclose material line items for the following metrics:

    a.   Total Pro Rata Cash Rents, including all underlying necessary inputs and assumptions, including specifically: cash rent collected by MGP from the Existing Master Lease, and MGP's share of the cash rent collected by BREIT JV;

    b.   Adjusted EBITDA, including all underlying necessary inputs and assumptions, including specifically: MGP's general and administrative expenses (excluding equity-based compensation expense), and MGP's share of BREIT JV's general and administrative expenses;

    c.   AFFO, including all underlying necessary inputs and assumptions, including specifically: amortization of financing costs and cash flow hedges; MGP's share of amortization of financing costs of its unconsolidated affiliate; non-cash

compensation expense; straight-line rental revenue (which is defined as the difference between contractual rent and cash rent payments, excluding lease incentive asset amortization); MGP's share of straight-line rental revenues of its unconsolidated affiliate; amortization of lease incentive asset and deferred revenue relating to non-normal tenant improvements; acquisition-related expenses; non-cash ground lease rent, net; other expenses; (gain) loss on unhedged interest rate swaps, net; MGP's share of provision for income taxes of its unconsolidated affiliate; and provision for income taxes; consolidated net income (computed in accordance with U.S. GAAP), gains and losses from sales or disposals of property (presented as property transactions, net), depreciation, as defined by the National Association of Real Estate Investment Trusts, and MGP's share of depreciation of its unconsolidated affiliate; and

d.  Unlevered Free Cash Flow, including all underlying necessary inputs and assumptions, including specifically: working capital changes, and capital expenditures.

45.    The Registration Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in all projection sets.

46.    This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

47.    Without accurate projection data presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Evercore or Morgan Stanley's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning VICI's Financial Projections*

48.     The Registration Statement fails to provide material information concerning financial projections for MGP provided by MGP management and VICI and relied upon by Evercore and Morgan Stanley in their analyses.   The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading.

49.     The Registration Statement should have, but fails to provide, certain information in the projections that MGP management and VICI provided to the Board, Evercore, and Morgan Stanley.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

50.     With regard to the VICI Projections prepared by VICI management, the Registration Statement fails to disclose material line items for the following metrics:

    a.   Adjusted EBITDA, including all underlying necessary inputs and assumptions, including specifically: contractual interest expense and interest income (collectively, interest expense, net), and income tax expense;

    b.   AFFO, including all underlying necessary inputs and assumptions, including specifically: non-cash leasing and financing adjustments, non-cash change in allowance for credit losses, transaction costs incurred in connection with the acquisition of real estate investments, non-cash stock-based compensation expense, amortization of debt issuance costs and original issue discount, other non-cash interest expense, non-real estate depreciation (which is comprised of the depreciation related to VICI's golf course operations), capital expenditures (which are comprised of additions to property, plant and equipment related to VICI's golf course operations), impairment charges related to non-depreciable real estate, gains (or losses) on debt extinguishment, other non-recurring, non-

cash transactions (such as non-cash gain upon lease modification) and non-cash adjustments attributable to non-controlling interest with respect to certain of the foregoing, net income (or loss) attributable to common stockholders (computed in accordance with GAAP), gains (or losses) from sales of certain real estate assets, depreciation and amortization related to real estate, gains and losses from change in control, and impairment write-downs of certain real estate assets and investments in entities when the impairment is directly attributable to decreases in the value of depreciable real estate held by the entity; and

    c.   Unlevered Free Cash Flow, including all underlying necessary inputs and assumptions, including specifically: working capital changes, and capital expenditures.

51.    With regard to the MGP Adjusted VICI Projections prepared by VICI management and adjusted by MGP, the Registration Statement fails to disclose material line items for the following metrics:

    a.   Adjusted EBITDA, including all underlying necessary inputs and assumptions, including specifically: VICI's Total Revenue, VICI's cash general and administrative expenses, golf expenses, capital expenditures and minus non-controlling interest; and

    b.   Unlevered Free Cash Flow, including all underlying necessary inputs and assumptions, including specifically: less cash taxes, plus/(less) changes in net working capital, and less stock based compensation.

52.    The Registration Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in all projection sets.

53.    This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

54.     Without accurate projection data presented in the Registration Statement, Plaintiff is unable to properly evaluate VICI's true worth (and therefore the worth of the merger consideration), the accuracy of Evercore or Morgan Stanley's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

_Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Evercore_

55.     In the Registration Statement, Evercore describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

56.     With respect to the _DCF Analysis – MGP_, the Registration Statement fails to disclose the following:

   a.   The specific terminal values for MGP utilized in the analysis;

   b.   The specific inputs and assumptions used to determine the utilized perpetuity growth rate range of 1.50% to 2.50%;

   c.   The specific inputs and assumptions used to determine the utilized EV/EBTIDA multiple range of 14.50x to 16.50x as applied to MGP's 2027 EBITDA Projections;

   d.   The specific inputs and assumptions used to determine the utilized discount rate range of 8.0% to 9.0%;

   e.   MGP's weighted average cost of capital;

   f.   MGP's net debt as of June 30, 2021; and

   g.   The fully diluted outstanding MGP Class A Common Shares as of August 2, 2021.

57. With respect to the *DCF Analysis – VICI*, the Registration Statement fails to disclose the following:

    a. The specific terminal values for VICI utilized in the analysis;

    b. The specific inputs and assumptions used to determine the utilized perpetuity growth rate range of 1.50% to 2.50%;

    c. The specific inputs and assumptions used to determine the utilized EV/EBTIDA multiple range of 16.50x to 18.50x as applied to VICI's 2027 EBITDA Projections;

    d. The specific inputs and assumptions used to determine the utilized discount rate range of 8.0% to 9.0%;

    e. VICI's weighted average cost of capital;

    f. VICI's net debt as of June 30, 2021; and

    g. The fully diluted outstanding VICI common stock as of August 2, 2021.

58. With respect to the *Selected Public Company Trading Analysis - MGP*, the Registration Statement fails to disclose the following:

    a. The specific reasoning as to why only one company was selected to be compared to MGP and VICI;

    b. The specific inputs and assumption used to determine the selected TEV/2022E Adjusted EBITDA multiple reference range of 15.0x to 16.0x;

    c. The specific inputs and assumption used to determine the selected Price/2022E AFFO multiple reference range of 14.0x to 15.0x;

    d. MGP's net debt as of June 30, 2021; and

    e. The fully diluted outstanding MGP Class A Common Shares as of August 2, 2021.

59. With respect to the *Selected Public Company Trading Analysis - VICI*, the Registration Statement fails to disclose the following:

    a.  The specific reasoning as to why only one company was selected to be compared to MGP and VICI;

    b.  The specific inputs and assumption used to determine the selected TEV/2022E Adjusted EBITDA multiple reference range of 17.0x to 18.0x;

    c.  The specific inputs and assumption used to determine the selected Price/2022E AFFO multiple reference range of 15.5x to 16.5x;

    d.  VICI's net debt as of June 30, 2021; and

    e.  The fully diluted outstanding VICI common stock as of August 2, 2021.

60.    With respect to the *Precedent Transaction Analysis*, the Registration Statement fails to disclose the following:

    a.  The specific date on which each selected transaction closed;

    b.  The aggregate value of each selected transaction; and

    c.  The specific inputs and assumption used to determine the selected rent multiple range of 13.0x to 18.1x.

61.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

62.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public MGP stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Morgan Stanley*

63.    In the Registration Statement, Morgan Stanley describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail

to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

64.    With respect to the *Comparable Public Company Analysis*, the Registration Statement fails to disclose the following:

    a.   The metrics for each comparable company analyzed.

65.    With respect to the *Dividend Discount Analysis - MGP*, the Registration Statement fails to disclose the following:

    a.   The calculated aggregate implied present value of dividends per share that MGP was forecasted to generate for the period from July 1, 2021 through December 31, 2025, and the specific inputs and assumptions utilized therein including:

        i.   the specific guidance and direction of VICI management utilized;

        ii.   expected rent terms from the MGM Master Lease,

        iii.   The specific projections prepared and provided by MGP management utilized;

        iv.   The specific Wall Street research analyst projections utilized;

        v.   The specific discount rate implemented;

    b.   The specific terminal values for MGP utilized in the analysis;

    c.   The specific inputs and assumptions used to determine the utilized AFFO multiple range of 14.6x to 16.6x; and

    d.   The specific inputs and assumptions used to determine the utilized discount rate range of 5.9% to 7.9%.

66.    With respect to the *Dividend Discount Analysis - VICI*, the Registration Statement fails to disclose the following:

    a.   The calculated aggregate implied present value of dividends per share that MGP was forecasted to generate for the period from July 1, 2021 through

December 31, 2025, and the specific inputs and assumptions utilized therein including:

    i.  the specific guidance and direction of VICI management utilized;

    ii.  the specific internal estimates of VICI's management utilized;

    iii.  The specific discount rate implemented;

b.  The specific terminal values for VICI utilized in the analysis;

c.  The specific inputs and assumptions used to determine the utilized AFFO multiple range of 14.6x to 16.6x; and

d.  The specific inputs and assumptions used to determine the utilized discount rate range of 6.7% to 8.7%.

67.    With respect to the *Discounted Cash Flow Analysis – MGP*, the Registration Statement fails to disclose the following:

a.  The calculated range of implied present values (as of June 30, 2021) of the net free cash flows that MGP was forecasted to generate during the six months ending December 31, 2021 through the twelve months ending December 31, 2025, including specifically:

    i.  the specific guidance and direction of VICI management utilized;

    ii.  expected rent terms from the MGM Master Lease,

    iii.  The specific projections prepared and provided by MGP management utilized;

    iv.  The specific Wall Street research analyst projections utilized;

    v.  The specific discount rate implemented;

b.  The specific inputs and assumptions used to determine the utilized discount rate range of 5.4% to 6.7%;

c.  MGP's weighted average cost of capital;

d.  MGP's cost of equity;

    e.  MGP's current weighted average interest rate on its current indebtedness to calculate MGP's cost of debt

    f.  The range of implied terminal enterprise values of MGP as of December 31, 2025 calculated; and

    g.  The specific inputs and assumptions used to calculate a reference range of AV/EBITDA multiples of 16.1x to 17.1x.

68.    With respect to the *Discounted Cash Flow Analysis – VICI*, the Registration Statement fails to disclose the following:

    a.  The calculated a range of implied present values (as of June 30, 2021) of the net free cash flows that VICI was forecasted to generate as contained in projections prepared by VICI management during the six months ending December 31, 2021 through the twelve months ending December 31, 2025:

    b.  The specific inputs and assumptions used to determine the utilized discount rate range of 5.9% to 7.3%;

    c.  VICI's sensitized range of weighted average cost of capital;

    d.  VICI's cost of equity;

    e.  VICI's current weighted average interest rate on its current indebtedness to calculate VICI's cost of debt

    f.  The range of implied terminal enterprise values of MGP as of December 31, 2025 calculated; and

    g.  The specific inputs and assumptions used to calculate a reference range of AV/EBITDA multiples of 16.1x to 17.1x.

69.    With respect to the *Premiums Paid Analysis*, the Registration Statement fails to disclose the following:

    a.  The premiums paid in each specific selected precedent transaction.

70.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

71.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public MGP stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

## FIRST COUNT

## Violations of Section 14(a) of the Exchange Act

## (Against All Defendants)

72.     Plaintiff repeats all previous allegations as if set forth in full herein.

73.     Defendants have disseminated the Registration Statement with the intention of soliciting stockholders, including Plaintiff, to vote their shares in favor of the Proposed Transaction.

74.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of her name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

75.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the

circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

76.     The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

77.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

78.     The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

79.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

**SECOND COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against all Individual Defendants)**

80.     Plaintiff repeats all previous allegations as if set forth in full herein.

81.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff in her capacity as a Company stockholder.

82.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

83.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of MGP's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the

misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

84.     The Individual Defendants acted as controlling persons of MGP within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause MGP to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled MGP and all of its employees.  As alleged above, MGP is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor, and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

C.     Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: September 17, 2021                    **BRODSKY SMITH**

By: _____
Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*